1
2
3
4
5
6
7

8            **UNITED STATES DISTRICT COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10

11  LEROY E. KENDALL,                    )   Case No.: 1:13-cv-00209-LJO-JLT
                                         )
12             Petitioner,               )   FINDINGS AND RECOMMENDATIONS TO
                                         )   DENY PETITION FOR WRIT OF HABEAS
13        v.                             )   CORPUS (Doc. 1)
                                         )
14  CYNTHIA TAMPKINS,                    )   ORDER DIRECTING THAT OBJECTIONS BE
                                         )   FILED WITHIN TWENTY-ONE DAYS
15             Respondent.               )
                                         )
16  _____

17        Petitioner was convicted in 2010 of attempted murder, assault with a deadly weapon, inflicting

18  corporal injury on a spouse, and battery on a spouse.  (Doc. 15, Lodged Document ("LD") 33, p. 2).  The

19  jury also found true a special allegation that Petitioner inflicted great bodily injury, that he personally

20  used a dangerous or deadly weapon and that he personally inflicted great bodily injury during the

21  commission of the battery. Id.  he was sentenced to 13 years by the Kern County Superior Court.

22  **I.    FACTUAL BACKGROUND**

23        The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

24        **I. Prosecution Evidence**

25        **A. Victim's Testimony**

26        The victim testified that she married appellant in 2007 and they moved to California the

27

28  _____
[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1).
Thus, the Court adopts the factual recitations set forth by the 5th DCA.

                                                1

following year because her father was sick.

On June 26, the victim was sick with pneumonia and resting in bed. Appellant became angry and threw several objects at her, including a spray bottle, a vacuum and an earring rack. The victim feared that appellant would kill her so she fled out the back door. The victim injured herself jumping over a fence into a neighbor's yard.

The victim's father passed away a few days later. His wake was held on July 7 and the victim spent the day at church. When the victim left home, at approximately 9:00 a.m., appellant was drinking vodka and orange juice with a woman named "Annette" and the victim's brother, Alphonso Fuller (Fuller).

The victim returned home around 5:30 p.m. The house was empty. Appellant and Fuller arrived with a case of beer and a bottle of liquor in a bag. The victim, who was still ill, retired to her bedroom. Appellant and Fuller went into the garage, where they drank alcohol and smoked cigarettes. The victim did not drink any alcohol or take any illegal drugs. She is diabetic and stopped drinking alcohol 25 years ago.

Appellant entered the victim's bedroom and said, "I got your brother to the point where he's not able to defend himself nor you, too." Appellant left the bedroom and went into the kitchen. The victim heard him rummaging in the kitchen drawers. He returned to the bedroom holding a large butcher knife. Appellant called the victim a "black B," and said that he would kill her. The victim was sitting on the side of the bed and she put her right arm up with her palm out to protect herself. Appellant swung the knife at her seven times, stabbing her in the chest, back and arms. Appellant left the butcher knife in her chest and left the bedroom. The victim pulled the knife out of her chest and walked into the living room, where Fuller was asleep. She handed Fuller the knife and collapsed.

The victim was hospitalized for treatment. She suffered serious injuries, including a punctured lung. She was in a great deal of pain and still has scars on her back, arms, chest and stomach.

On the day before the victim testified, appellant gave a photograph of the victim to the victim's mother. Appellant drew handwritten notations on it. They included the phrase "Rejeanie Fuller 666" and several symbols. He drew lines across the image of the victim in the areas where he had stabbed her. [Footnote] The photograph frightened the victim.

**B. Other Prosecution Evidence**

Fuller testified that he drank beer and hard liquor with appellant before and after his father's wake on July 7. The victim did not drink any alcohol. The mood between appellant and the victim "wasn't good" because they had argued at some earlier point in time. Appellant began to complain about the victim while they were drinking in the garage after the wake. Fuller did not "want to have that conversation" and went inside the house. Fuller checked on his sister and then fell asleep in the living room. Sometime later, the victim woke him up. She was "real bloody" and hyperventilating. He heard a door close and then heard appellant's car start. Fuller took a knife out of the victim's left hand and placed it on a coffee table. He called emergency services; the 911 call was played for the jury.

Jean King testified that appellant arrived at a house in California City where she and several other women had gathered after the wake. He was the only male in the house. A police officer called and directed all the women to go outside. Appellant came up behind her and handed her a set of keys on a key ring. The keys had something red and sticky on them. She dropped the keys. Someone picked them up and handed them to a police officer.

California City Police Department Sergeant Jeffrey Takeda was designated as the investigating officer. Sergeant Takeda testified that he arrived at the victim's home at approximately 7:00 p.m. The victim was semi-conscious. She told him that "Leroy" stabbed her and confirmed that "Leroy" was her husband. A large, bloody knife was resting on a table in the living room. A knife block in the kitchen had an empty slot for a knife that was of similar size and shape to the one found in the living room. There was a large amount of blood around the victim and a blood trail in the hallway. There were bloodstains on the master bedroom carpet, a large amount of blood on the bed and a "couple of items on the bed that [were] consistent with human tissue."

Sergeant Takeda testified that a family member arrived and told police officers that appellant could be found at another house in California City. Police officers responded to that location and arrested appellant. California City Police Department Officer Jack Craig handed Sergeant Takeda a set of keys that appeared to have blood on them. During the booking process Sergeant Takeda saw "some scratches" on appellant's right forearm.

Officer Craig testified that he placed appellant in a cell. While Officer Craig was walking down the hall, he heard the sound of water running in appellant's cell for an excessive period of time. As Officer Craig returned to the cell and saw appellant attempting to wash something off the right sleeve of the long-sleeved T-shirt that he was wearing. [Footnote] Officer Craig removed appellant from the cell and took the shirt from him. He saw a substance that appeared to be blood on one of the sleeves. Officer Craig also "noticed what [appellant] explained as cuts on his right forearm," and "a spot ... on the left side of [appellant's] abdomen."

Sergeant Takeda testified that he went to Kern Medical Center on July 11 to interview the victim, but she was still unconscious. He measured and photographed the victim's injuries. There was a horizontal stab wound on her right chest, two stab wounds to her upper right arm, a stab wound to her lower right arm, horizontal cut marks on the palm area at the edge of her right hand and bruising around her left wrist. Sergeant Takeda interviewed the victim on July 17. She was still hospitalized. The victim became visibly upset and "stated that it did not make sense why Leroy would do this to her."

Appellant's former wife, Judy Kendall, testified about two incidents of domestic violence that occurred in 1995.

Photographs of the crime scene, the victim's wounds, the knife, the marks on appellant's arm and the photograph of the victim on which appellant drew handwritten notations were admitted into evidence.

## II. Defense Evidence

California City Police Officer John Bishop testified that he interviewed the victim on June 26. The victim said "that she got into an argument with [appellant] and that at some point, [appellant] threw several items at her, including a wooden food tray and a plastic tray which held all of her earrings." The victim said that one of the trays hit her in the back and another tray scratched one of her arms and one of her legs. In his report, Officer Bishop wrote that the victim sustained "minor injuries."

California City Police Officer Anthony Flores testified that all of the crime scene photographs were taken on July 7. The date on the photographs is "the time stamp given by the report-writing program that we use when it was uploaded into that report-writing system, not when it was actually taken."

The victim was recalled as a defense witness. She denied informing appellant at any point

3

during their marriage that she "had a mental disorder such as by the name of PSD or Post Traumatic Stress Syndrome—disorder." The victim denied drinking any alcohol on July 7 and denied arguing with appellant on that date because he thought she was "abusing [her] prescription drugs." She denied driving to Los Angeles on July 7 where a friend named "Boogey" styled her hair and drank cocktails with her. She denied grabbing the knife by the blade and stabbing appellant in the arm. On cross-examination, she testified that the pill bottles by her bed were medications to treat pneumonia and other medical conditions.

Fuller and King were recalled as defense witnesses. Fuller testified that appellant did not force him to get drunk. Fuller did not recall seeing "a bunch of pill bottles" beside the victim's bed. King testified that appellant, who she knew as "Rujeanie's husband," handed her a set of keys on the evening of July 7.

Sergeant Takeda was recalled as a defense witness. He asked the victim "about her medical problems or any mental problems and she told me the only medical problems she had was her diabetes. She had a heart attack about ten years prior." The victim said that she does not drink because she is a diabetic. She did not mention anything about a workers' compensation claim. When Sergeant Takeda interviewed the victim on July 17, she was not incoherent and did not indicate that she and appellant had argued on July 7.

Officer Craig was recalled as a defense witness. He did not believe that the cuts on appellant's forearms "were severe enough to transfer much blood at all."

Appellant did not testify.

(LD 33, pp. 3-8, footnotes omitted).

## II.   DISCUSSION

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's

4

enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### B.    Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of  the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings.  Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114

F.3d at 1500.  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists."  Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The Court assesses the prejudicial impact of any constitutional by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

**III.     Review of Petitioner's Claims**

Petitioner alleges: (1) he was denied due process when the trial court and prosecutor failed to disclose mental health records of the victim; (2) he was denied due process and the trial court abused its by refusing to allow Petitioner to call certain "expert" witnesses; (3) admission of evidence of prior bad acts in support of prosecution's case was unconstitutional; and (4) the trial court committed various unconstitutional errors, including permitting Petitioner's ex-wife to testify and refusing to admit certain defense evidence proving that the arresting officer lied.

A.  Failure To Admit Victim's Mental Health Records

Petitioner first contends that he was denied access to the victim's mental health records, which, he argues, would have shown that his wife suffered from serious mental problems, including memory lapses and suicide attempts.  This contention is without merit.

1.  The 5th DCA's Opinion.[2]

The 5th DCA rejected Petitioner's claim as follows:

---

[2] As Respondent notes, this argument was presented to the 5th DCA as part of a claim that Petitioner should be appointed advisory counsel to deal with the victim's health records.

## A. Facts

Defense counsel subpoenaed the victim's health records.

Pursuant to a stipulation, on September 17, 2008, the prosecutor provided the victim's health records from Hall Ambulance and Kern Medical Center that related to the stabbing.

Appellant sought medical records that predated the stabbing.

In February 2009, the trial court reviewed some medical records and determined that they did not contain relevant material.

In September 2009, the trial court reviewed additional medical records. It concluded that some of the records relating to a workers' compensation claim that the victim filed in the 1990's could be relevant to appellant's defense and ordered those records to be provided to defense counsel. Since the victim did not waive her right to confidentiality, the court entered a protective order prohibiting appellant from seeing these records.

On March 2, 2010, appellant moved to represent himself. Appellant stated that he was a college graduate and his prior work history included nine years as a police officer, a management position with the United States Department of Agriculture, and "paralegal work for the federal and state level."

The court informed appellant that the protective order preventing him from access to the victim's psychiatric and medical records would remain in effect if he was permitted to represent himself. Defense counsel would be allowed to discuss the contents of the medical records with appellant, but appellant would not be given copies of the records. The court asked appellant, "You understand you are not going to be able to look at those records?" Appellant replied, "Yes, sir."

The court also informed appellant he would not "have a stand-by attorney or co-counsel. If you represent yourself, that's it. You are representing yourself. You are not getting help from Mr. Gardina or somebody else." The court asked appellant if he "realize[d] that" and appellant replied affirmatively.

The court granted the self-representation motion and authorized funds for a defense investigator. The court stated that defense counsel "might have to bring [the medical records] over to the court or give [them] to the investigator."

On March 18, 2010, appellant filed a motion for appointment of advisory counsel. Appellant argued in his supporting points and authorities that he needed advisory counsel because he did not have access to the victim's medical records. Also, he needed advisory counsel because the law library had limited resources, he would be subpoenaing witnesses who lived out of town and out of state, he did not have access to witnesses and needed trial clothing.

This motion was heard on April 14, 2010. During his remarks, appellant focused exclusively on obtaining the victim's mental health records. He asked the court to "appoint me advisory counsel who can take custody of these ... records or dismiss this protective order so that I can take custody of [them]." The court continued the hearing and ordered Mr. Gardina to appear.

Court reconvened on April 16, 2010. The prosecutor stated that she did not have any objection to providing appellant with medical records that were related to the stabbing.

Mr. Gardina said the medical records that are the subject of the protective order related to a workers' compensation claim that the victim made during the "mid '90s to the late '90s, early

2000's." He had discussed the contents of these records with appellant. He explained that appellant "had a theory, and I said the records did not support that theory." He gave the records to appellant's investigator. He did not believe that appellant needs advisory counsel due to these records.

Appellant said that he had previously seen these medical records in his capacity as the victim's husband and he "know[s] the records pertain to the fact that she has a history of suicide attempts, she has a history of anger and mental lapses." Appellant argued that since he was now acting as his own defense counsel, the records should be released to him.

The court denied the motion for advisory counsel and refused to modify the protective order. It reasoned:

> "There is a difference between the records being discoverable and actually being admissible. From [what] I've heard, I don't need to appoint advisory counsel at this point in time. You are representing yourself. We went through the perils and pitfalls before. Your investigator can still discuss the records with you but cannot give you the actual records. So apparently you have indicated to me that you have seen them before and you know all this information.... But if the trial court allows you to make a case for or cross-examine the witness about memory lapses and/or suicide attempts, again if that's the trial court's call, then you have the information to do that."

**B. Denial Of The Motion For Advisory Counsel Was Not An Abuse Of Discretion**

Appellant argues that the trial court abused its discretion by failing to appoint advisory counsel. We disagree.

A court possesses discretion to appoint advisory counsel to a self-represented defendant to "promote orderly, prompt and just disposition of the cause." (People v. Mattson (1959) 51 Cal.2d 777, 797.) "The weight of both federal and California precedent, including United States Supreme Court precedent, establishes that a criminal defendant does not have a constitutional right to the assistance of advisory counsel, but that it is within the discretion of trial courts to appoint advisory counsel to assist a criminal defendant who is proceeding in propria persona." (People v. Goodwillie (2007) 147 Cal.App.4th 695, 709.) "The factors which a court may consider in exercising its discretion on a motion for advisory counsel include the defendant's demonstrated legal abilities and the reasons for seeking appointment of advisory counsel." (People v. Crandell (1988) 46 Cal.3d 833, 863.)

Some appellate courts have concluded that a self-represented appellant in a non-capital case cannot be allowed to challenge a verdict on the ground that the trial court abused its discretion or otherwise committed reversible error by not appointing advisory counsel because it would "entirely eviscerate [ ]" the rule that a defendant who exercises his right to represent himself cannot later complain that he was denied the effective assistance of counsel. (People v. Garcia (2000) 78 Cal.App.4th 1422, 1430.) Other courts continue to recognize the propriety of such a challenge. They adhere to the position that a trial court's denial of advisory counsel is reviewed for an abuse of discretion and will not be disturbed on appeal if there is a reasonable or even fairly debatable justification for the court's ruling. (See, e.g., People v. Sullivan (2007) 151 Cal.App.4th 534, 554.)

Assuming arguendo that a verdict in a noncapital case may be challenged on the ground that a self-represented defendant was not provided with advisory counsel, there was no abuse of discretion in this case. Appellant was fully warned of the risk of self-representation, and he was specifically told that he would not be able to review the victim's medical records or be provided with the assistance of legal counsel.  During the hearings on the motion for advisory counsel,

appellant exclusively focused on his need to review medical records relating to the victim's workers' compensation claim. Yet, appellant also acknowledged that he had previously seen these records. Also, the defense investigator possessed these records and could discuss them with appellant. In addition, Mr. Gardina stated that these medical records did not support the defense theory that appellant wanted to pursue. Since appellant previously saw these medical records and could discuss them with the investigator, his ability to investigate and prepare a defense and to cross-examine the victim was fully protected.

Additional factors do not establish an abuse of discretion. The mere fact that there were resource limitations due to appellant's limited access to the law library did not translate to a right to advisory counsel. The defense investigator could ensure that subpoenas were served on defense witnesses and obtain clothing for appellant. Appellant's claim that advisory counsel was necessary because this case involved complex legal and factual issues was not presented to the trial court. Consequently, it was not preserved for appellate review. (People v. Mattson (1990) 50 Cal.3d 826, 853–854.)

The record reflects that appellant was an educated person with legal training as a paralegal. Appellant was mounting a vigorous defense at the time that the motion for advisory counsel was denied. Appellant had filed motions for judicial notice, to set aside the information, and to require a material witness bond. Here, as in People v. Crandell, supra, 46 Cal.3d at page 864, appellant "had demonstrated in his motion papers an ability to research the law, to cite applicable precedent, and to engage in reasoned argument." Similar to the defendant in People v. Sullivan, supra, 151 Cal.App.4th at page 554, appellant vigorously pursued his defense of actual innocence. He filed a "plethora of motions" and during the trial he interposed objections, cross-examined prosecution witnesses and presented evidence in his own defense. (Ibid.) This is not a case where the lack of advisory counsel created a trial that "could rightly be described as a '"farce or a sham."' [Citation.]" (People v. Bigelow (1984) 37 Cal.3d 731, 745.)

For all of these reasons, we hold that the trial court did not abuse its discretion when it declined to appoint advisory counsel.  (People v. Sullivan, supra, 151 Cal.App.4th at pp. 554–555.)

(LD 33, pp. 1-23).

        2.  Federal Standard.

Due process requires that the prosecution disclose exculpatory evidence within its possession. Brady v. Maryland, 373 U.S. 83, 87 (1963); Cooper v. Brown, 510 F.3d 870, 924 (9th Cir.2007). This obligation encompasses the duty to discover and produce favorable evidence known to others acting on the government's behalf in the case, such as other agencies involved in the investigation or prosecution of the defendant. Kyles v. Whitley, 514 U.S. 419, 437 (1995); United States v. Zuno–Arce, 44 F.3d 1420, 1427 (9th Cir.1995).

There are three components of a Brady violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  Strickler v. Greene, 527 U.S. 263, 281–82 (1999). See also Banks v. Dretke, 540 U.S. 668, 691 (2004); Silva v.

Brown, 416 F.3d 980, 985 (9th Cir.2005).  The third element, prejudice, is also described as materiality.  See Benn v. Lambert, 283 F.3d 1040, 1053 n. 9 (9th Cir.2002) (explaining that, "for Brady purposes, the two terms have come to have the same meaning").  Evidence is material under Brady if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Kyles, 514 U.S. at 433–34 (internal quotation marks and citation omitted).

    3. Analysis.

    The gravamen of Petitioner's claim, as expressed in the petition, is that the trial court and the prosecution conspired to prevent the production of medical records that would have shown that the victim was both intoxicated and mentally ill at the time of the assault.  (Doc. 1, p. 14).  As discussed above, the prosecutor freely agreed to provide the victim's medical records that were relevant to the assault.  Prior to trial, the trial judge twice reviewed medical documents sought by Petitioner and provided some to the defense while ruling that other records were not relevant.  Petitioner's counsel also reviewed the records, discussed their content with Petitioner, and indicated to the trial court that Petitioner had sought the records in support of a "theory" he had, but counsel had advised Petitioner that his review of the medical records did not reveal anything that supported Petitioner's theory.  Petitioner then told the court that he had personally seen those same medical records, which related to events in the mid-to-late 1990s and into the early 2000s, when he and the victim were still married, and he believed they contained relevant material.  The court indicated that such outdated records had no relevance to the victim's mental or physical condition at the time of the assault and were therefore irrelevant.  The court noted the difference between discoverable evidence and admissible evidence, pointing out that these records fell into the former category.

    Under California law, only relevant evidence is admissible.  Cal. Evid. Code, sec. 350.  "Relevant evidence" is "evidence, including evidence relevant to the credibility of a witness or hearsay declaration having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.  Id., sec. 210.

    Initially, Respondent contends that Petitioner had seen and discussed with counsel all evidence deemed relevant by the trial judge.  This appears to be undisputed.  The only issue Petitioner raises is

10

whether the trial court correctly deemed certain medical records irrelevant, thus precluding Petitioner from having access to them.  However, the question of whether a state judge properly applies state evidentiary rules is strictly a question of state law, and does not give rise to a claim for habeas relief.  E.g., Hicks v. Feiock, 485 U.S. 624, 629 (1988) (A determination of state law by a state appellate court is binding in a federal habeas action). To the extent that Petitioner is attempted to raise some vague federal due process claim, he has not articulated it with any degree of specificity, either in the state court or in the instant petition.

Further, to the extent that Petitioner is contending that some kind of "conspiracy" existed between the trial court and the prosecution to suppress disclosure of the undisclosed medical records, there is no evidence to support the claim.  First, the prosecution agreed to provide any medical records that were deemed relevant by the court.  Second, the trial court reviewed the records and ruled individually on their relevance.  Third, Petitioner's own counsel reviewed the records.  Fourth, Petitioner concedes he had seen some of the irrelevant records while married to the victim.  That Petitioner disagrees with the trial judge's assessment of relevance neither raises a cognizable habeas claim nor proves the existence of any conspiracy.

Put simply, Petitioner had access to the victim's medical records that were contemporaneous with the assault and therefore deemed relevant to the case.  Petitioner was not permitted access to outdated medical records that were so remote in time as to be legally irrelevant to the case.  The presence of such remote medical records would not be favorable to Petitioner's case, nor would their absence be prejudicial.  Thus, any Brady claim is entirely without a factual basis in this record.

B.  Denial Of Expert Witness Testimony

Petitioner next contends that the trial court wrongly refused to permit Petitioner to call certain expert witnesses at trial.  This contention is also without merit.

1.  The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

**A. Facts**

On or about May 24, 2010, appellant filed ex parte applications for orders appointing three defense experts and requesting travel expenses and lodging. He sought appointment of Dr. Matthew Carroll, who is a forensic psychiatrist, as well as Michael Sweedo, who is an

expert in blood stain patterns, and "Forensic Analytical Sciences, Inc."

In appellant's supporting declaration, he averred that the court issued an order on February 27, 2009, appointing Forensic Analytical Sciences to examine DNA evidence. He also averred that the court issued orders on July 27, 2009 and September 15, 2009, appointing Dr. Carroll and Mr. Sweedo to examine evidence in this case. However, the clerk's transcript does not show that any orders appointing experts or allocating funds to the defense were made on those dates. During the <u>Marsden</u> hearing conducted on March 2, 2010, defense counsel made remarks indicating that funds were allocated for the defense to conduct DNA testing and that Forensic Analytical Sciences, Inc. tested some of evidence. There is no indication in the record that funds were allocated for Dr. Carroll or Mr. Sweedo, or proof that either of these individuals examined any evidence in this case.

The three applications bear stamps indicating that they were denied by Kern County Superior Court Judge Lee P. Felice on May 25, 2010. Next to the denial stamp on two of the applications is the handwritten phrase "w/out prejudice."

On June 29, 2010, the hearing on in limine motions was held. The court asked appellant if he wanted to renew his applications to appoint experts. Appellant responded affirmatively.

The prosecutor stated that appellant did not have anyone under subpoena. Also, she had not received a witness list and had not been provided with the required 30 days' notice for expert witnesses. The prosecutor commented that appellant was "unprepared to proceed to trial but yet, we're not hearing the motion to continue."

Appellant insisted that he was ready to proceed with trial.

After a recess, the prosecutor orally motioned for all the discovery to which the People were legally entitled. The prosecutor stated that she had not been provided with notice of experts that were retained by the defense or with any reports or material generated by them.

During discussion of this request, the court asked appellant if he had "any discovery with regard to DNA analysis in this case." Appellant replied that he had a three-page report dated July 16, 2009, that was prepared by Eleanor Salmon, who is a DNA technician employed by Forensic Analytical Sciences, Inc. The prosecutor stated that she had not been provided with a copy of the report, although appellant might have included portions of the report in his letters to her. The trial court directed appellant to hand the report to the prosecutor. The prosecutor examined the report and stated that page two was missing. The court asked appellant, "[W]here is page 2 of 4?" Appellant replied that he did not "have it available at this time, but like I said, I made it a part of the file by mailing all of my exhibits along so it should be in this master filed dated—it was filed March 18th, 2010."

The court asked appellant if he had consulted with any other experts. Appellant said that he had correspondence from Mr. Sweedo in which he opined that the wounds on the victim's palm were not defensive in nature. The court directed appellant to gather all related materials and give them to the bailiff so he could show them to the prosecutor. The prosecutor examined these materials and said that appellant had handed him "a string of e-mails that appear candidly to be communications between the investigator and the expert arranging appearances [and] money.... There's no report."

Next, the court attempted to ascertain which expert witnesses appellant planned to call at trial. Appellant eventually named Dr. Carroll, Mr. Sweedo and Ms. Salmon. Appellant stated he did not have any additional materials from these experts. He asked for an order approving additional funds "in the neighborhood of 7,000, no more than $7,500 for each" expert so they would testify.

12

The court asked the prosecutor if she wanted to make a "motion[ ] to exclude evidence for failure to provide discovery." The prosecutor argued that appellant should be required to either agree to a 30–day continuance to comply with the notice requirements or waive his right to present expert evidence. She could not immediately respond to expert DNA testimony and would need time to prepare a response. The court stated that a continuance would not be granted without good cause. The prosecutor motioned for a continuance. The court tentatively denied this motion, reasoning that it would not "treat [appellant] any differently than I would any defendant who's represented by an attorney in terms of requiring him to meet the standards that he must meet." Thereafter, the prosecutor moved to exclude the expert witnesses identified by appellant because discovery requirements were not satisfied.

Appellant argued, "It would be my position, Your Honor, that the prosecution is not ready. She's been haggling all morning trying to find some excuse to continue it." Appellant also argued, "I don't think at this point in time, especially with the ex-parte witnesses, that I should be required to show my hand, so to speak, so much as to go into this much detail. Plus, I don't have this material." Appellant asserted that if the trial court declined to appoint the three expert witnesses it would violate his "6th and 14th Amendment rights through the United States Constitution of effective cross-examination and effective confrontation during trial." Appellant stated, "I'm not agreeing to any more continuances. If the honorable court denies me these most crucial witnesses, then I will just take it up on appeal."

The court asked appellant if he was aware that his applications to appoint the three experts had been denied by Judge Felice. Appellant acknowledged that he knew the applications were denied. The court asked appellant if he was asking it "to reconsider your request to appoint these three experts." Appellant replied, "If necessary, yes, Your Honor."

The trial court ruled, "I'm going to deny your request for appointment of the experts that have been previously denied by Judge Felice. I find that your requests are untimely. I don't find good cause under the circumstances."

The trial court granted the People's motion to exclude the three expert witnesses. It found "that the defendant has failed to comply with discovery, specifically with the requirement that disclosures be made at least 30 days prior to trial under Penal Code section 1054.7, including the requirement that the names and ... statements of those experts, including results of examinations, tests, experiments or comparisons be provided in discovery and all of that is excluded."

**B. The Expert Witnesses Were Properly Excluded**

Appellant argues that the trial court abused its discretion and violated his constitutional due process and equal protection rights when it denied his motion to reconsider the requests for appointment of three experts and precluded these individuals from testifying. We are not convinced.

**1. Applicable Legal Principles**

"On June 5, 1990, the electorate adopted Proposition 115, the 'Crime Victims Justice Reform Act,' which, inter alia, mandated reciprocal discovery in criminal matters." (People v. Edwards (1993) 17 Cal.App.4th 1248, 1259.) "Section 1054 et seq. 'governs the scope and process of criminal discovery' in this state." (People v. Superior Court (Meraz) (2008) 163 Cal.App.4th 28, 46 (Meraz).)

Section 1054.3 requires a criminal defendant and his or her attorney to disclose to the prosecutor "[t]he names and addresses of persons, other than the defendant, he or she

intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial." (§ 1054.3, subd. (a)(1).)

Section 1054.7 provides that "[t]he disclosures required under this chapter shall be made at least 30 days prior to the trial, unless good cause is shown why a disclosure should be denied, restricted, or deferred." " 'Good cause' " under section 1054.7 is expressly limited "to threats or possible danger to the safety of a victim or witness, possible loss or destruction of evidence, or possible compromise of other investigations by law enforcement." (§ 1054.7.)

Section 1054.5, subdivision (b) provides that "a court may make any order necessary to enforce the provisions of this chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order." Yet, subdivision (c) of section 1054.5 provides, in relevant part: "The court may prohibit the testimony of a witness pursuant to subdivision (b) only if all other sanctions have been exhausted."

People v. Edwards, supra, 17 Cal.App.4th 1248, determined "that preclusion sanctions may be imposed against a criminal defendant only for the most egregious discovery abuse. Specifically, such sanctions should be reserved to those cases in which the record demonstrates a willful and deliberate violation which was motivated by a desire to obtain a tactical advantage at trial such as the plan to present fabricated testimony in Taylor [ v. Illinois] (1988) 484 U.S. 400]." (Id. at p. 1263.) In People v. Gonzales (1994) 22 Cal.App.4th 1744, 1758, the appellate court concluded, "[A]bsent a showing of significant prejudice and willful conduct, exclusion of testimony is not appropriate as punishment. To conclude otherwise might well place upon the truth-finding process an imprimatur of unreliability inconsistent with confidence in a finding of guilt."

A trial court's ruling on discovery matters is reviewed under the abuse of discretion standard. (Meraz, supra, 163 Cal.App.4th at p. 48.) "'[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered. [Citations.]' [Citation.]" (Ibid.)

**2. The Trial Court Did Not Abuse Its Discretion Or Infringe Appellant's Constitutional Rights When It Excluded The Defense Witnesses**

Having carefully examined the record, we discern no abuse of discretion. Respondent's argument that "[t]he record supports an implied finding that appellant intentionally failed to follow the discovery rules to gain a tactical advantage, and that less restrictive sanctions would not have achieved the purpose of reciprocal discovery," is convincing.

The circumstances surrounding appellant's failure to comply with the discovery statutes and timing of his oral motion to reconsider the denial of the applications to appoint experts demonstrate that appellant was engaging in gamesmanship. Appellant's application for appointment of defense experts was denied on May 25, 2010. Yet, appellant waited until in limine motions were heard on June 29, 2010, to orally renew these applications. During the hearing on in limine motions, appellant acknowledged that he knew the applications had been denied. When appellant was asked to explain his failure to comply with the discovery statutes, he replied, "I don't think at this point in time, especially with the ex-parte witnesses, that I should be required to show my hand, so to speak, so much as to go into this much detail." Appellant opposed a continuance and accused the prosecutor of

14

"haggling all morning trying to find some excuse to continue it." Appellant's inaction following denial of his pretrial applications for appointment of defense experts, his disregard of discovery statutes and his opposition to a trial continuance were all conscious tactical decisions that appellant believed would work to his advantage.

The prosecutor was prejudiced by appellant's failure to comply with the discovery statutes. The People's case did not include expert testimony. By failing to provide the prosecutor with a witness list and statements, appellant deprived the prosecutor of a reasonable opportunity prior to trial to prepare a response to the issues that would be raised by expert testimony for the defense on the subjects of DNA, blood splatter and the victim's mental health.

In light of all the circumstances, we conclude that less restrictive sanctions would have undermined the purpose of the reciprocal discovery statute, rewarded appellant's misconduct and required the trial to be continued over his objection. Exclusion of the experts' testimony was an appropriate remedy and the trial court did not abuse its discretion when it denied appellant's motion to reconsider the order denying his applications for appointment of defense experts and granted the prosecutor's motion to exclude these experts.

Since the trial court acted within its discretion in excluding these witnesses and its decisions were not arbitrary or disproportionate to the purposes that the discovery statutes were designed to serve, these rulings did not violate appellant's constitutional rights to due process and equal protection. (United States v. Scheffer (1998) 523 U.S. 303, 308; cf. Taylor v. Illinois, supra, 484 U.S. at p. 409 [preclusion of defense witnesses as sanction for violating discovery rule did not violate compulsory process clause]; see also, e.g., People v. Cudjo (1993) 6 Cal.4th 585, 611; People v. Hart (1999) 20 Cal.4th 546, 607.)

In addition, appellant has not established prejudice. No evidence in the record supports appellant's claim that these witnesses would have provided testimony favorable to the defense. Appellant did not make an offer of proof concerning the expected testimony of these experts. There is nothing in the record indicating what the three experts would have testified if they had been called as defense witnesses. During the Marsden hearing on March 2, 2010, defense counsel stated that the results of the DNA analysis did not benefit the defense. Thus, on this appellate record, the alleged error is harmless

(LD 33, pp. 23-30).

2.  Federal Standard.

Whether rooted in the Due Process Clause or the Sixth Amendment, the Constitution guarantees

a criminal defendant a meaningful opportunity to present a complete defense. Crane v. Kentucky, 476

U.S. 683, 690 (1986); see also Holmes v. South Carolina, 547 U.S. 319, 324 (2006). The right to

introduce evidence in one's defense, however, is subject to reasonable restrictions "to accommodate

other legitimate interests in the criminal trial process." United States v. Scheffer, 523 U.S. 303, 308

(1998) (internal citations omitted). The Due Process Clause does not guarantee the right to introduce all

relevant evidence. Montana v. Egelhoff, 518 U.S. 37, 41–42 (1996). "[W]ell-established rules of

evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other

factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Holmes, 547

U.S. at 326–27; see also Egelhoff, 518 U.S. at 42 (there is no "unfettered right" to offer evidence that is

incompetent, privileged, or otherwise inadmissible under state rules of evidence). Relevant evidence

also can be excluded for failure to comply with procedural requirements, Michigan v. Lucas, 500 U.S.

145, 151 (1991) (preclusion of evidence for failure to comply with notice requirements does not violate

Sixth Amendment), or as a discovery sanction, Taylor v. Illinois, 484 U.S. 400, 414 (1998) (preclusion

of testimony for failure to identify witness). The trial judge enjoys broad latitude in this regard and

rulings excluding evidence do not violate the constitutional right to present a defense so long as they

are not arbitrary or disproportionate to the purposes that they are designed to serve. Scheffer, 523 U.S.

at 308. To obtain relief, defendant must demonstrate that the exclusion of evidence offends a

fundamental principle of justice. Egelhoff, 518 U.S. at 43.

In Moses v. Payne, 555 F.3d 742 (9th Cir.2009), the Ninth Circuit pointed out that the Supreme

Court has articulated these principles in cases where the defendants argued that the state evidentiary

rules, by their own terms, impinged upon their constitutional right to present a complete defense. Id. at

757–58. The Supreme Court has not squarely addressed whether a trial court's discretionary exclusion

of evidence pursuant to an otherwise valid evidentiary rule violates a defendant's constitutional rights,

nor has it set forth standards for assessing such discretionary decisions. Id. at 758–59. For this reason,

the Ninth Circuit held that a state court's decision rejecting a constitutional challenge to a trial court's

exercise of discretion to exclude evidence cannot constitute an unreasonable application of clearly

established Supreme Court precedent. Id. at 759 (rejecting claim that trial court's exercise of discretion

to exclude expert testimony violated constitutional right to present a defense).

3. Analysis.

Here, the 5th DCA that Petitioner "intentionally failed to follow the discovery rules to gain a

tactical advantage, and that less restrictive sanctions would not have achieved the purpose of reciprocal

discovery." The state court also found that Petitioner, in refusing to provide discovery of his experts,

had engaged in "gamesmanship." Petitioner essentially confirmed this finding by telling the trial court

he "should [not] be required to show my hand."

As mentioned, "[f]actual determinations by state courts are presumed correct absent clear and

convincing evidence to the contrary, § 2254(e)(1)," and a decision adjudicated on the merits and based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. at 340. Here, the record is devoid of any evidence to contradict the state court's findings that Petitioner engaged in gamesmanship and intentionally failed to follow state discovery rules; thus, this Court must presume that such findings are correct.

Additionally, the state court found that, because the prosecution had not listed experts and because Petitioner failed to notify the prosecution of his own purported experts, the prosecution was deprived of the opportunity prior to trial to reasonably prepare a response to the issues that would be raised by the defense experts. Again, this finding of prejudice must be presumed to be correct. Accordingly, the state court's conclusion that the trial court's exercise of discretion in excluding the defense experts was appropriate was not an objectively unreasonable determination. Scheffer, 523 U.S. at 308. Accordingly, this claim should be denied.

C.  Admission Of Prior Bad Acts Evidence

Next, Petitioner claims that the trial court erred in permitting Petitioner's ex-wife to testify regarding prior instances of spousal abuse. This contention too is without merit.

1.  The 5th DCA's Opinion

The 5th DCA rejected Petitioner's claim as follows:

**A. Facts**

The prosecutor filed an in limine motion to admit evidence of two incidents of prior domestic violence pursuant to Evidence Code section 1109. Judy would testify about an occasion in February 1995 during which appellant knocked her down and put a gun to her head. She would also testify about another occasion in July 1995 in which appellant placed a briefcase containing three explosive devices under a bed in her house. If necessary, as rebuttal evidence, the prosecutor would offer the testimony of Judy's son, Leon Hussey, who was an eyewitness to appellant's physical violence towards his mother.

During the hearing on this motion, appellant argued that this evidence was irrelevant because "[t]his case is not about what happened between me and my ex-wife back in 1994." He also argued that Judy and Hussey "got up in court, initially told police and lied and said that I had did all these things. Then they came back into the court less than two months later and admitted that they had lied about these [things]." In addition, appellant asserted that the charges arising from the explosive device incident had been "dismissed and expu [n]ged."

The prosecutor stated that she possessed an appellate opinion affirming appellant's conviction for possessing an unregistered device in case No. 97–2503EA. (U.S. v. Kendall, supra, 138 F.3d

17

1235.)  However, she did not want to admit evidence of this conviction.

The trial court admitted testimony about the prior acts of domestic violence. It reasoned:

> "I am considering the authorities cited referencing Evidence Code section 1109 and the case law. And this is an issue that the Court needs to exercise its discretion under Evidence Code section 352 with regard to whether the probative value of such evidence is substantially outweighed by its prejudicial effect. I am also going to consider the four-factor balancing test as outlined in the case of [People v. Branch (2001) 91 Cal.App.4th 274, 283–286].
>
> "I do find that based on the offer of proof, the prior offense is similar to the charged offense. I do find that it's not likely to confuse a jury about the issue of the current case after hearing testimony about the prior alleged offense. I do find that the prior conduct alleged is substantially similar to the charged offense. I also find that the evidence would not be unduly time consuming.... I do find the probative value of such evidence is not substantially outweighed by its prejudicial effect and People's motion Number 1 is granted, which means they may present the evidence consistent with the offer of proof from both Judy Kendall and Herman Leron Hussey."

Judy testified that in February 1995, appellant picked her up by her neck, slammed her to the floor and hit her head of the floor. He put a pistol to her head, cocked it and said, "[N]igger, I will kill you." She was afraid and "scared for [her] life." He ceased the attack when his children started crying. She obtained a restraining order against him after this incident. They subsequently reconciled. In July 1995, Judy found a briefcase containing bombs under "the bed in the front bedroom." She was frightened and thought that the bombs were "a threat towards [her]self."

After Judy testified, the court found that admission of this testimony "is in the interest of justice."

## B. The Applicable Statutory Framework And Standard Of Review

"Evidence of prior criminal acts is ordinarily inadmissible to show a defendant's disposition to commit such acts. (Evid.Code, § 1101.) However, the Legislature has created exceptions to this rule in cases involving sexual offenses (Evid.Code, § 1108) and domestic violence (Evid.Code, § 1109)." (People v. Reyes (2008) 160 Cal.App.4th 246, 251.) Evidence Code section 1109 "reflects the legislative judgment that in domestic violence cases, as in sex crimes, similar prior offenses are 'uniquely probative' of guilt in a later accusation." (People v. Johnson (2010) 185 Cal.App.4th 520, 532.)

Evidence Code section 1109, subdivision (a)(1) provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by [Evidence Code] Section 1101 if the evidence is not inadmissible pursuant to [Evidence Code] Section 352."

Evidence Code section 1109, subdivision (e) provides, "Evidence of acts occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that the admission of this evidence is in the interest of justice." "[T]he 'interest of justice' exception is met where the trial court engages in a balancing of factors for and against admission under [Evidence Code] section 352 and concludes ... that the evidence was 'more probative than prejudicial.'" (People v. Johnson, supra, 185 Cal.App.4th at pp. 539–540.)

Due to its incorporation of Evidence Code section 352, Evidence Code section 1109, subdivision (a)(1) makes evidence of past domestic violence inadmissible if the court

18

determines that "its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid.Code, § 352.)

"'"The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues. In applying [Evidence Code] section 352, 'prejudicial' is not synonymous with 'damaging.'"' [Citation.]  Relevant factors in determining prejudice include whether the prior acts of domestic violence were more inflammatory than the charged conduct, the possibility the jury might confuse the prior acts with the charged acts, how recent were the prior acts, and whether the defendant had already been convicted and punished for the prior offense(s)." (People v. Rucker (2005) 126 Cal.App.4th 1107, 1119.)

A trial court's decision to admit evidence pursuant to Evidence Code sections 1109 and 352 is reviewed under the deferential abuse of discretion standard. (People v. Johnson, supra, 185 Cal.App.4th at p. 531.) "We will reverse only if the court's ruling was 'arbitrary, whimsical, or capricious as a matter of law. [Citation.]' [Citation.]" (People v. Branch, supra, 91 Cal.App.4th at p. 282.)

**C. Admission Of Propensity Evidence Was Not An Abuse Of Discretion**

The record affirmatively demonstrates that the trial court carefully weighed the proffered evidence of prior domestic violence against the applicable legal standard. It determined that the two incidents were substantially similar to the charged offense, were not likely to confuse the jury, would not be unduly time consuming and admission of this evidence would be in the interest of justice. All of these conclusions are reasonable and supported by the record. The prior acts of domestic violence were extremely probative to prove appellant's propensity for violence against his wives. Further, "[a] defendant's pattern of prior acts of domestic violence logically leads to the inference of malice aforethought and culpability for murder." (People v. Brown, supra, 192 Cal.App.4th at p. 1237.) The prior domestic violence, although extremely serious, was less inflammatory than the circumstances of the stabbing and Judy's testimony required only 16 pages of trial transcript. This evidence was not excessively remote and was substantially similar to the charged offenses.

Appellant's contention that the trial court's balancing test was legally deficient because it failed to individually consider each incident of prior domestic violence and did not set forth the factual basis supporting its finding that admission of this evidence was in the interest of justice misses the mark. The trial court applied the correct standard to the evidence in a reasoned and reasonable matter. The court was not required to "'expressly weigh prejudice against probative value, or even expressly state that it has done so. All that is required is that the record demonstrate the trial court understood and fulfilled its responsibilities under ... [Evidence Code] section 352. [Citation.]" (People v. Jennings (2000) 81 Cal.App.4th 1301, 1315.) The trial court is not required "to articulate its consideration of each of a list of particular factors of probability and prejudice in making a decision under [Evidence Code] section 352." (Ibid.)

Appellant also argues that the prior acts of domestic violence were excessively remote because they occurred 13 years before the charged offenses. We are not convinced. "No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible." (People v. Branch, supra, 91 Cal.App.4th at p. 284.) "[S]ubstantial similarities between the prior and the charged offenses balance out the remoteness of the prior offenses. [Citation.]" (Id. at p. 285.)  For example, People v. Morton (2008) 159 Cal.App.4th 239, 248, upheld admission of evidence of domestic violence that occurred "more than nine years prior" to the current charge and People v. Johnson (2000) 77 Cal.App.4th 410, determined that evidence of prior domestic violence dating back approximately 10 years before the charged crimes was properly admitted. (Id. at pp. 416–420.) Cases upholding admission of evidence

pursuant to Evidence Code section 1108 are instructive. People v. Branch, supra, at page 284, upheld admission of a sex crime that was committed 30 years before the current crime. People v. Pierce (2002) 104 Cal.App.4th 893, 900, upheld admission of a prior sex crime that occurred 23 years before the charged offense. People v. Soto (1998) 64 Cal.App.4th 966, upheld admission of an appellant's molestation of two young girls 30 years before and 21 to 22 years before the current offenses. (Id. at pp. 977–978, 991–992.) People v. Waples (2000) 79 Cal.App.4th 1389, upheld admission of a prior molestation that occurred during a period of time that was 18 to 25 years before the charged crimes. (Id. at pp. 1393, 1395.) Following and applying these authorities, we conclude that appellant's prior domestic violence was not excessively remote.

Appellant's arguments that the prior incidents of domestic violence were dissimilar to the stabbing and that the Legislature's concern with an "escalating pattern of domestic violence" was not satisfied are unpersuasive. All three incidents involved serious acts of violence against appellant's wives and express or implied threats of murder. In 1995, appellant put a gun to Judy's head and put a bomb under her bed. In 2008, he stabbed the victim with a kitchen knife while she was resting in bed. All of these incidents of domestic violence were life-threatening and left little room for escalation. People v. Johnson, supra, 185 Cal.App.4th 520, is analogous. In that case, the defendant was charged with attempted murder. Admission of evidence showing that he shot his former girlfriend was upheld. The appellate court explained, "The common factors in all three crimes strongly suggest defendant has a problem with anger management, specifically with regard to female intimate partners, and specifically when he feels rejected or challenged by such a partner. He has demonstrated a pattern of using guns to exact revenge." (Id. at p. 533.)

We are also not persuaded by appellant's contention that admission of this evidence was likely to mislead the jurors because they were not informed whether the events led to criminal convictions. "The admission of prior acts as propensity evidence encompasses both charged and uncharged acts." (People v. Brown, supra, 192 Cal.App.4th at p. 1233.) Here, as in People v. Johnson, supra, 185 Cal.App.4th 520, there was no confusion because "[t]he past acts of violence were separated by time and involved different victims and witnesses. And there was no deception or confusion engendered by the arguments of counsel." (Id. at p. 533.)

Appellant's final contention, that the explosive device incident did not qualify as domestic violence, was not preserved for appellate review. Appellant did not present this objection to the trial court for its decision. He only objected to admission of the prior acts of domestic violence on the grounds of relevance and remoteness. Since this point was not raised below, appellant forfeited appellate consideration of it. (Evid.Code, § 353, subd. (a); People v. Mattson, supra, 50 Cal.3d at pp. 853–854.)

For all of these reasons, we reject appellant's challenges to the admissibility of propensity evidence and uphold admission of Judy's testimony concerning appellant's prior acts of domestic violence. (People v. Brown (2000) 77 Cal.App.4th 1324, 1331–1334; People v. Poplar (1999) 70 Cal.App.4th 1129, 1135–1139; People v. Jennings, supra, 81 Cal.App.4th at pp. 1313–1316.)

(LD 33, pp. 40-46).

       2. Federal Standard And Analysis.

First, as Respondent correctly argues, the United States Supreme Court has expressly left open the question of whether the admission of propensity evidence violates due process.  See  Estelle v. McGuire, 502 U.S. at 75, n. 5; see Holgerson v. Knowles, 309 F.3d 1200, 1202 (9th Cir.2002) (habeas

relief not warranted unless due process violation clearly established by the Supreme Court); Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), *reversed on other grounds*, Woodford v. Garceau, 538 U.S. 202 (2003)(the Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith...."). In this regard, in Holley v. Yarborough, 568 F.3d 1091 (9th cir. 2009), the Ninth Circuit explained as follows:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ [of habeas corpus] should be issued when constitutional errors have rendered the trial fundamentally unfair [Citations], it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.

Holley, 568 F.3d at 1101.

Hence, the state courts' rejection of Petitioner's claim *could not* have been "contrary to, or an unreasonable application of, clearly established" Supreme Court authority, since no such "clearly established" Supreme Court authority exists. 28 U.S.C. § 2254(d)(1).

Second, even if the foregoing were not true, Petitioner's claim sounds only in state law and is therefore not cognizable in federal habeas proceedings. A federal habeas corpus court has no authority to review a state's application of its own laws, but rather must determine whether a prisoner's constitutional or other federal rights have been violated. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990). Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding. Estelle, 502 U.S. at 67; Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), *cert. denied,* 478 U.S. 1021 (1985).

Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process. Estelle, 502 U.S. at 72; Pulley v. Harris, 465 U.S. 37, 41 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191 (1994); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990). However, the failure to comply with state rules of evidence alone is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991). Only if there are no permissible inferences that the jury may draw from the evidence can its admission rise to the level of a due process violation. Id. at 920. Only when "there are *no* permissible inferences the jury may draw from the

1   evidence" and it renders the trial fundamentally unfair will an evidentiary ruling violate federal due

2   process.  Windham, 163 F.3d at 1102; Jammal, 926 F.2d at 919-920; see also Boyde v. Brown, 404

3   F.3d 1159, 1172 (9th Cir. 2005)("A habeas petitioner bears a heavy burden in showing a due process

4   violation based on an evidentiary decision.").  Notably, intent is a permissible inference that the jury

5   may draw from the evidence of prior bad acts.  See, Houston v. Roe, 177 F.3d 901, 910 n. 6 (9th Cir.

6   1999).

7           Here, as the state appellate court reasonably concluded, the evidence regarding Petitioner's

8   former domestic abuse of the victim was relevant to show his propensity for violence against his wives.

9   This is a proper and legitimate inference the jury could have drawn from the proffered evidence.

10  Therefore, admission of this evidence did not rise to a federal due process violation.[3]  Windham, 163

11  F.3d at 1102.

12          Further, any error caused by admitting this testimony could not be said to have "a substantial

13  and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637; See also

14  Penry v. Johnson, 532 U.S. 782, 793–96 (2001). The record reflects that the state trial judge employed

15  the balancing test required under California law and struck an appropriate and reasonable balance

16  between petitioner's rights and the California legislature's clear intent that evidence of prior similar acts

17  be admitted in domestic violence prosecutions. The trial court held a hearing on the prosecutor's pre-

18  trial in limine motion to introduce evidence of petitioner's uncharged acts of domestic violence pursuant

19  to California Evidence Code § 1109. (LD 33, p. 40). The trial court instructed the jury at the close of

20  the evidence that if they found petitioner had committed the prior acts of domestic violence they could,

21  but were not required to, infer that the defendant had a disposition to commit domestic violence

22  offenses. (LD 2, p.600).  The jury was also instructed that if they found that petitioner had such a

23  disposition, they could, but were not required to, infer that he was likely to have committed the charged

24  offenses. (Id.).  These instructions did not compel the jury to draw an inference of propensity; rather,

25

26  [3] Merely placing a "due process" label on an alleged violation does not entitle Petitioner to federal relief.  Langford v. Day,
    110 F.3d 1386, 1388-89 (1996).  Broad, conclusory allegations of unconstitutionality are insufficient to state a cognizable
    claim. Jones v. Gomez, 66 F.3d 199, 205 (9th Cir.1995); Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1991) (bald

27  assertions of ineffective assistance of counsel did not entitle the petitioner to an evidentiary hearing); see also Hiivala v.
    Wood, 195 F.3d 1098, 1106 (9th Cir.1999), citing Gray v. Netherland, 518 U.S. 152, 162-63 (1996) ("general appeals to

28  broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish
    exhaustion).

they merely allowed it to do so.  Moreover, the court instructed the jury that the fact that Petitioner committed prior acts of domestic violence was not, by itself, sufficient to establish guilt in this case, but was merely one inference out of many upon which the jury could draw.  (Id.).  Finally, the jury was directed that it should not consider petitioner's prior conduct, or evidence thereof, for any other purpose, e.g., such as proof that petitioner committed the crimes charged in the Information.  (Id.). In addition, the jury instructions given at petitioner's trial, viewed in their entirety, correctly informed the jury that the prosecution had the burden of proving all elements of each charge against petitioner beyond a reasonable doubt and that the instructions should be considered as a whole. (E.g., LD 3, p. 613)

The jury is presumed to have followed all of these instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000); Brown v. Ornoski, 503 F.3d 1006, 1018 (9th Cir.2007).  Although the evidence of prior acts of domestic violence was potentially powerful, "[the fact] that prior acts evidence is inflammatory is not dispositive in and of itself."  LeMay, 260 F.3d at 1030. In any event, the prior acts evidence was not, in the Court's view, as inflammatory as the evidence introduced by the prosecution against Petitioner for the assaults in this case.

The admission of petitioner's prior acts of domestic violence did not violate any right clearly established by federal precedent or result in prejudice under the circumstances of this case. See Jensen v. Hernandez, 864 F.Supp.2d 869, 923-924 (E.D. Cal. 2012); Chavarria v. Hamlet, 2003 WL 1563992 (N.D. Cal. March 25, 2003) at *11. Accordingly, Petitioner is not entitled to federal habeas relief with respect to his due process claim.

D.  Miscellaneous Evidentiary Errors

Finally, Petitioner claims that the trial court erred in excluding forensic evidence proving that the arresting officer lied during trial.  Petitioner also reiterates his contention that the trial court erred in permitting his ex-wife to testify to domestic violence claims that were fifteen years old.  These contentions are also without merit.

The 5th DCA did not address the issue of the excluded police report since it was not raised on appeal in Petitioner's briefs.  (LD 30; 32).  It was raised by Petitioner, acting pro se, in his petition for review in the California Supreme Court.  (LD 34).  However, in that petition for review, Petitioner

makes the following brief explanation vis-à-vis this particular claim:

> The "Appellant" asserts that the (Trial Judge) (Abused) his (judicial discretion), when he (refused) to allow this "Appellant" to show his (jury) "Police Report's," and "Police photo's" in the form of (Exhibits) which would (prove) that the (Arresting Officers), in this case, (Lied) during trial "about" the (Crucial) fact's, of this case.  It is the assertion of this "Appellat" that had he been allowed to show his "Jury" the (Police photo's) and (Report's), in question, then this "Appellant" would have (convinced) any "Reasonable Minded" (Jury) that he was (innocent) of the "Charges," in question.

(LD 34, p. 9).

At no point does Petitioner explain either the specific police reports and their content, or the photographs, to which he is referring.  More significantly, he does not make any kind of intelligible argument to establish either that the trial court abused its discretion or that such an error prejudiced his case.  Based upon Petitioner's skeletal allegation of error, the Court is unable to "connect the dots" and determine what evidence should have been presented to the jury and how its exclusion prejudiced Petitioner.

Broad conclusory allegations of unconstitutionality are insufficient to state a cognizable federal habeas claim. Jones v. Gomez, 66 F.3d 199, 205 (9th Cir.1995); Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1991) (bald assertions of ineffective assistance of counsel did not entitle the petitioner to an evidentiary hearing); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999), citing Gray v. Netherland, 518 U.S. 152, 162-63 (1996) ("general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion). A petitioner in federal court cannot merely characterize some state act as unconstitutional and expect the court to explore all possible grounds under each article and amendment of the Constitution. Without further details and explanation, the Court concludes that this claim fails to state a cognizable federal habeas claim.

To the extent that ground four is premised upon either the exclusion of Petitioner's expert witnesses or the admission of § 1109 prior instances of domestic abuse, the Court has already addressed those issues and found them to be without merit. Accordingly, ground four should be rejected.

Based on the foregoing, the Court concludes that none of Petitioner's claims have merit and that

the petition should therefore be denied.[4]

## RECOMMENDATION

Accordingly, the Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be **DENIED** with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  **Within 21 days** after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed **within ten days** (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 14, 2015**                          **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE

---

[4] The petition itself lists only the issues analyzed herein.  However, in the brief in support of the petition, Petitioner lists no fewer than eleven issues.  (Doc. 1, pp. 9-10).  These additional issues appear to be photocopied from Petitioner's pro se petition for review in the California Supreme Court.  (LD 34).  These "additional" issues are based upon Petitioner's assertion that the trial judge abused his discretion in various evidentiary rulings made during trial.  However, as mentioned, Petitioner has not listed any of those evidentiary claims as grounds for habeas relief in the petition itself.  Nor, indeed, has Petitioner cited any federal constitutional grounds as a basis for habeas relief.  Rather, Petitioner simply maintains that the trial court abused its discretion.  Generally, merely placing a "due process" label on an alleged violation of state law does not entitle Petitioner to federal relief. Langford v. Day, 110 F.3d 1386, 1388-89 (1996). As mentioned above, broad conclusory allegations of unconstitutionality are insufficient to state a cognizable federal habeas claim. Jones, 66 F.3d 205; Greyson v. Kellam, 937 F.2d at 1412. Here, Petitioner has not even attempted to characterize these "additional" evidentiary claims as federal due process claims.  Accordingly, they do not state cognizable federal habeas claims and will be disregarded.